RODD *v.* HEARTT.

1. A district judge, sitting as the Circuit Court, may allow an appeal from his own decree.

2. Where the claim on a fund in the Registry of the Admiralty of several mortgages secured in a body by one mortgage, exceeds $2000, an appeal to this court will lie by the mortgagees in a body, though the claim of no one of them exceed the said sum.

3. Where the Circuit Court "decrees" that a fund in court belongs to cer-

---

\* 42 Missouri, 439.

tain persons named, and that their claims be paid, and (the fund not being large enough to pay all the persons in full) orders a distribution by a commissioner, in accordance with the principles laid down by the court, and on a table of distribution being reported by the commissioner, recites that the commissioner had submitted a distribution based *upon the decree* theretofore *made* by the court, and then "orders and decrees" that the fund be distributed according to it, the "decree" may be considered as of either date as respects the matter of a supersedeas.

4. As respects the question whether the appeal was in time to operate as a supersedeas, the case is regulated by the act of June 1st, 1872, which allows sixty days, and not by the Judiciary Act of 1789.

ON motion to dismiss an appeal from the Circuit Court for the District of Louisiana; the case being this:

A steamer having been sold under a proceeding *in rem* in the admiralty, left in the registry of the court $4337.51, claimed on the one hand by Rodd and several other persons, creditors of the owners, who by one mortgage on the vessel had undertaken to secure all these creditors in a body, and on the other hand claimed by Heartt and others, mariners, furnishers of supplies, and material-men. The claim of Rodd under the mortgage was $4825, and of his co-mortgagees over (in the aggregate) $8000. The claims of the opposing mariners, furnishers of supplies, and material-men were $10,151.

The case coming before the District Court that court ordered that the fund in dispute should be paid to Rodd and the others in satisfaction of the mortgage claims. This gave Rodd, who was the largest of the mortgage creditors, $1498.99 as his *pro rata share.*

From this decree of the District Court the mariners, furnishers of supplies, and material-men appealed; and on the appeal, the Circuit Court, on the 3d *of June*, 1872, ordered that the decree of the District Court "be avoided and reversed;" and decreed that "the claims of the mariners, furnishers of supplies, and material-men be recognized as superior to those of the mortgage creditors and paid in preference to the latter, and that a new distribution of the proceeds be prepared by the commissioner in accordance with the principles thus laid down."

A new table of distribution having been prepared accordingly, and reported to the court, the following order was entered on the 6*th of June*, 1872:

"The commissioner having submitted a distribution based *upon the decree heretofore made* by the court, it is ordered and decreed that the balance of the proceeds of the steamer, now in the registry of this court, be distributed as follows:"

And then followed the names of the distributees and the *pro rata* sum awarded to each.

This decree being made, Rodd and his co-mortgagees, by one petition filed in the Circuit Court, *on the* 15*th of June*, 1872 (but one Sunday having intervened between that day and the preceding 3d of June), prayed an appeal; and on the same day, the *district* judge sitting in the Circuit Court, allowed it.

*Mr. R. De Gray, for the motion*, asked the dismissal of the appeal on three grounds:

First. That the appeal was from a decree of the Circuit Court, reversing a decree of the District Court, and was allowed by the district judge; who, though the Judiciary Act makes him a member of the Circuit Court, yet provided "that no district judge shall give a vote in any cause of appeal . . . from his own decision."

Second. Because no one of the claims exceeded $2000; Rodd's, which was the largest, being but $1498.99, and the Judiciary Acts giving an appeal only "where the matter in dispute exceeds $2000."

Third. Because the appeal was not in time to operate as a supersedeas; more than ten days, as the learned counsel alleged, having elapsed from the 3d of June, when, as *he* contended, the final decree was entered, till the 15th, when the appeal was allowed, and the Judiciary Act of 1789, making a writ of error (to which by an act of 1803 any appeal conforms) a supersedeas only in cases where it is served within ten days (Sundays excepted) after the decree has passed.

*Mr. T. J. Semmes, contra.*

The CHIEF JUSTICE delivered the opinion of the court.*

As to the first of the grounds, on which a dismissal of this appeal is asked, on looking into the acts of Congress relating to the connection of the district judge with the Circuit Court, we are of opinion that, though upon appeals from the District Court the district judge has no vote in the Circuit Court, he has in all other respects the powers of a member of the court, and may consequently allow appeals from its decisions.

Secondly, it is apparent that, though no one of the claims allowed exceeded $2000, yet the claim of the appellants, which was disallowed, exceeded that sum.

Thirdly, we are of opinion that the decree may be considered as of either the 3d day of June or the 6th day of June, 1872, and that the appeal was in time to operate as a supersedeas under the act of 1789. That act, however, does not prescribe the existing rule. The act of June 1st, 1872,† which must govern the case, allows sixty days for the filing of the bond by which the appeal is made to operate as a supersedeas.

MOTION DENIED.

---

* This was the last opinion ever delivered by Chief Justice CHASE, and the last also given in the December Term, 1872. It was given on the 1st day of May, 1873. The Chief Justice died on the following 7th.

† 17 Stat. at Large, 198.